## 9244.  BRENARD MANUFACTURING COMPANY *v.* KINGSTON SUPPLY COMPANY.

1. Promises mutual to the extent that each affords the sole consideration to the other will not be construed as independent, but will, in the absence of clear indications to the contrary, be taken as dependent one upon the other; and while, ordinarily, dependent covenants are such as mutually afford to the other the whole consideration, still the stipulations and the circumstances of the contract may be such as to render covenants mutual and dependent even though one of them affords to the other only a part of its consideration. In such a case the question as to whether covenants shall be taken as mutually dependent is to be determined by reference to the rational meaning and intent of the parties as disclosed by the entire instrument, read in the light of the surrounding circumstances and the purposes for which the contract as a whole was made. Civil Code (1910), §§ 3720, 4223, 4303; *Schmidt* v. *Mitchell*, 117 *Ga.* 6 (43 S. E. 371); 7 R. C. L. 1090.

2. Even though an agreement may refer to certain notes as having been given "in payment," they are not to be so taken, where, by the terms of the same instrument, one of the conditions of the contract is to the effect that the obligations made by the notes shall be promptly met.

DECIDED MAY 14, 1918.

Appeal; from Bartow superior court—Judge Tarver. September 8, 1917.

The defendant entered into a contract for the purchase of a piano and certain other personal property from the plaintiff, and

executed six purchase-money notes, for $75 each, maturing monthly, the first of which was payable two months after date. The material portions of the contract are as follows:

"Kingston, State of Georgia, February 3, 1915.

"To Brenard Manufacturing Co., Iowa City, Iowa.

"Gentlemen: On your approval of this order, deliver to me at your earliest convenience, f. o. b. factory or distributing point, the Claxton piano, watches, silverware, and advertising matter described on this and reverse side, in payment for which I herewith hand you my six notes, payable to your order, aggregating $450.00. If order is not approved and shipped by you, the notes are to be cancelled and returned to me.

"My last twelve months sales were $30,000.00, and upon this figure my next twelve months sales to be $36,000.00, and that if $1\frac{1}{4}\%$ of my gross sales does not amount to four hundred fifty ($450.00) dollars for the next twelve months, you will pay me the deficiency in cash, and send your bond for $450.00 to cover this agreement with me. You are to conduct all of the correspondence in securing club leaders and members and conducting the club-extension campaign.

"To make the last above paragraph binding upon you, I agree to furnish you within ten days approximately 150 names and addresses of persons whom I believe will make good club leaders and members, with whom you are to take up correspondence immediately. I agree to take the shipments promptly, carry out the trade-extension campaign plan, promptly meet all obligations entered into under this agreement, keep the piano well displayed in my store, issue piano votes for each cent purchases, and every sixty days of this contract to report to you my gross sales, and promptly furnish you all information you request to enable you to push the trade-extension campaign.

"In consideration of the special methods set forth in your copyrighted plan and the special terms and agreements herein, this order can not be countermanded.

"Brenard Manufacturing Company's trade-extension campaign order consists of the following," etc.

Under the terms of the agreement the defendant's notes matured some time prior to the maturity of the contract; that is to say, the agreement pertaining to the guaranteed increase of sales

covered a period of one year commencing February 3, 1915, whereas the first note matured on April 3, 1915, and the last on September 3, 1915. The bond provided for by the terms of the contract was duly furnished the defendant by the plaintiff. The defendant did not pay the notes at maturity, and the plaintiff brought suit thereon as they matured; and finally, to the suit on the last note, the defendant filed a plea setting up that there had been a deficiency in the amount of the guaranteed gross sales during the period covered by the bond, and that by reason of this fact there was due the defendant, under the terms of the bond, a small amount in excess of the sum sued for on that note. After the evidence had been submitted, the court directed a verdict for the defendant, in the sum of $1.86, as representing the difference between the amount of the note sued on and the amount claimed by the defendant under the terms of the bond. To this the plaintiff excepts.

It is the contention of the plaintiff that since one of the conditions of the written agreement was that the defendant should "promptly meet all obligations entered into" thereunder, and since the defendant failed to pay the notes at maturity, the defendant is not entitled to the percentage on the deficiency of sales as conditionally provided for by the bond. On the other hand, it is contended by the defendant that the provision referred to, that the defendant obligates itself to "promptly meet all obligations entered into under this agreement," does not constitute a condition to the agreement, but that the condition to the agreement ends with the word "immediately," which precedes this provision in the third paragraph; and that even if that paragraph is to be construed all together, so as to make the stipulation as to the prompt meeting of the defendant's obligations a condition to the binding effect on the plaintiff of the second paragraph, still the condition was met by giving the notes, since the agreement states that the notes are given "in payment."

*Paul F. Akin,* for plaintiff. *Finley & Henson,* for defendant.

JENKINS, J. (After stating the foregoing facts.) Counsel for the defendant do not dispute the proposition that if, when the defendant bound itself to "promptly meet all obligations entered into under this agreement," it thereby imposed upon itself one of several conditions essential to the validity of the plaintiff's bond, an actual breach of the defendant's duty relative to the notes

would void the obligation of the bond. We think it is undoubtedly true that if the quoted provision of the contract must thus be construed as conditional at all, it necessarily follows that its breach would be sufficient to invalidate the corresponding dependent covenant, even though the stipulation quoted affords only a part of the consideration of the provision relating to the bond. The proposition which the defendant's counsel ably insist upon is that the language quoted from the agreement is but an independent stipulation, and that it does not constitute a condition at all. The commencement of the third paragraph of the contract expressly states that it proposes to make binding upon the plaintiff its obligation to furnish the bond as provided for in the preceding paragraph. Then follow seriatim the obligations imposed upon the defendant, among which is the one quoted, and with this enumeration the paragraph ends. The entire paragraph is thus made up of a succinct statement of the defendant's obligations, and we think it must reasonably be construed as a whole, and that the duties thus enumerated must together constitute the conditions which the paragraph itself refers to. It was clearly within the power of the parties to the agreement so to shape the contract that the guaranteeing bond to be given by plaintiff should be valid only upon the condition that the defendant should promptly meet its own obligation, expressed by the terms of its purchase-money notes. Construing the contract as a whole, this we think must reasonably have been the intent of the parties. The mutual benefits and burdens of the undertaking would seem to be far more readily met upon this assumption than to suppose that the plaintiff intended absolutely to guarantee a large increase in the defendant's sales, without any corresponding benefit to itself. While we agree with counsel for the defendant that the contract could not be reasonably taken to mean that the plaintiff was to await the prompt payment of the notes before executing its bond, still we think that it must have been in the minds of the parties to the contract that its validity was dependent upon the prompt fulfillment by the defendant of its own corresponding obligations. See *Equitable Manufacturing Co. v. Davis,* 130 *Ga.* 67, 70 (60 S. E. 262).

 *Judgment reversed. Wade, C. J., and Luke, J., concur.*